IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CRUM & FORSTER SPECIALTY
INSURANCE COMPANY,
    Plaintiff,

v.

PANTANAL CONTRUCTION INC,
    Defendant.

C.A. No.:

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Crum & Forster Specialty Insurance Company ("CFSIC") sets forth its Complaint for Declaratory Relief against Defendant Pantanal Contruction Inc ("Pantanal").

### *Parties, Jurisdiction and Venue*

1.    CFSIC is a foreign insurance company and Delaware corporation with its main administrative office located in New Jersey.

2.    On information and belief, Pantanal is a Massachusetts corporation with a principal office address at 72 Hancock Street, Apt. 1, Everett, Massachusetts.  The name and address of the Registered Agent for Pantanal is Marcio A. Da Silva, 72 Hancock Street, Apt. 1, Everett, Massachusetts.

3.    This action is a case of actual controversy which this Court may, pursuant to 28 U.S.C. § 2201(a), declare the rights and other legal relations of the parties hereto.

4.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

*The Underlying Action*

6. On November 4, 2022, Plaintiffs Board of Trustees of the 13-15 Belknap Street Condominium Trust, Aseem Kohli, Diana Eastman, Kai Yu Jen, Hsiang Huang, Tianze Wu, Jiani Yang, Tam Nguyen and Brandon Baker commenced suit and filed a Complaint and Jury Demand (the "Complaint"), which is attached hereto as **Exhibit 1**, against Defendants Spy Pond Development, LLC, Marcos A. Devers, MDJ Incorporated, Reginaldo Piccinato and Zil Development, LLC in the Middlesex County Superior Court, Commonwealth of Massachusetts, Civil Action No. 2281CV03845 (the "Underlying Action").

7. The Complaint alleges damages with respect to alleged deficiencies in the design, construction and development of the 13-15 Belknap Street Condominium and its common areas, facilities and four units.

8. On March 27, 2023, Reginaldo Piccinato and Zil Development, LLC filed their Third-Party Complaint against Pantanal in the Underlying Action, a copy of which is attached hereto as **Exhibit 2**.

9. The Third-Party Complaint alleges, in part:

5. On or around September 20, 2020, Pantanal and Zil entered into a subcontract agreement for which Pantanal was to perform the foundation work for the four-unit condominium complex located at 13-15 Belknap Street in Arlington, Massachusetts (Exhibit 1).

6. On or around September 20, 2020, M&D and Zil entered into a subcontract agreement for which M&D was to perform the framing work for the four-unit condominium complex located at 13-15 Belknap Street in Arlington, Massachusetts (Exhibit 2).

7. Each of the subcontracts require that the subcontractors indemnify and defend Zil and Piccinato.

8. The subcontracts also provide under paragraph 2 of the contract that Zil and its agents were to be named as additional insureds and that Zil and its agents

were to be listed as an additional insured on a primary and non-contributory basis.

9.     On or around November 4, 2022 the plaintiffs filed a claim alleging various construction defects, including but not limited to defects in the foundation as well as the framing of the building.

10.     The Third-Party Complaint asserts the following causes of action against Pantanal:

Count 1 – Contractual Duty to Defend; Count 3 – Contractual Indemnification; Count 5 – Breach

of Contract; and Count 7 – Contribution.

*The CFSIC Policies*

11.     CFSIC issued the following policies to "Pantanal Construction Inc" of 72 Hancock

St Apt 1 Everett, MA-02149 as the first Named Insured: (a) Policy Number BAK-72938-1

effective from December 2, 2020 to December 2, 2021 with limits of $1 million each occurrence

and $2 million general aggregate, a copy of which is attached hereto as **Exhibit 3** (the "2021

Policy"), and (b) Policy Number BAK-72938-2 effective December 2, 2021 to December 2, 2022

with limits of $1 million each occurrence and $2 million general aggregate, a copy of which is

attached hereto as **Exhibit 4** (the "2022 Policy") (collectively, the "Policies").

12.     The Policies are written on Commercial General Liability Form CG 00 01 (12/07)

and Section I – Coverages, Coverage A Bodily Injury and Property Damage Liability provides, in

part:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE**
**LIABILITY**

**1.     Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any

"suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

**(1)**     The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payments of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.**     This insurance applies to "bodily injury" and "property damage" only if:

**(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**     The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**     Prior to the policy period, no insured listed in Paragraph **1.** of Section **II** – Who is an Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**     "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** Of Section **II** – Who is an Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**     "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who is an Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)**     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)**     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage;" or

    **(3)**     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

13.     The Policies define several terms, including, but not limited to, the following:

**SECTION V – DEFINITIONS**

***

**3.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

***

**13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

***

**16.**     "Products-completed operations hazard":

**a.**     Includes all "bodily injury" and "property damage" occurring away from the premises you own or rent and arising out of "your product" or "your work" except:

    **(1)**     Products that are still in your physical possession; or

    **(2)**     Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)**     When all of the work called for in your contract has been completed.

        **(b)**     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)**     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete will be treated as completed. ….

17.     "Property damage" means:

**a.**     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**     Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells data processing devices or any other media which are used with electronically controlled equipment.

18.     "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged.  "Suit" includes:

**a.**     An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.**     Any other alternative dispute resolution proceeding in which damages are claimed and to which the insured submits with our consent.

***

21.     "Your product":

**a.**     Means:

**(1)**     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)**    You;

        **(b)**    Others trading in your name; or

        **(c)**    A person or organization whose business or assets you have acquired; and

    **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.**    Includes:

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)**    The providing of or failure to provide warnings or instructions.

**c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**    "Your work":

**a.**    Means:

    **(1)**    Work or operations performed by you or on your behalf; and

    **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

**b.**    Includes:

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)**    The providing of or failure to provide warnings or instructions.

14.    By way of the Amendment of Insured Contract Definition endorsement (Form CG 24 26 07 04), Paragraph 9 of the Definitions Section is replaced by the following:

Paragraph **9.** of the **Definitions** Section is replaced by the following:

**9.**    "Insured contract" means:

    **a.**    A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.**    A sidetrack agreement;

    **c.**    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.**    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.**    An elevator maintenance agreement;

    **f.**    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

    **(1)**    That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    **(2)**    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)**    Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

> **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or
>
> **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

15. There is no coverage for Pantanal (defense or indemnity) under the Policies with respect to the allegations and claims set forth in the Third-Party Complaint in the Underlying Action because there is no "property damage" caused by an "occurrence" as those terms are defined in the Policies.

16. To the extent any of the alleged damages in the Underlying Action did not occur during the policy periods of the Policies, there is no coverage for any such damages.

17. The Policies contain several exclusions applicable to Section I – Coverages, Coverage A Bodily Injury and Property Damage Liability, including the following.

**2. Exclusions**

This insurance does not apply to:          \*\*\*

**b**. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of assumption of liability in a contract or agreement. This exclusion does not apply for damages:

**(1)** That the insured would have in absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs to subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

>    **(a)**    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

>    **(b)**    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

***

**j.**    **Damage To Property**

"Property damage" to:

***

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage," arises out of those operations;

**(6)**    That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

***

Paragraphs **(3)**, **(4)**, **(5)**, and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products completed operations hazard."

***

**k.**    **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.**    **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.**    **Damage To Impaired Property Or Property Not Physically Injured**

 "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

>    **(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.    Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of:

(1)    "Your product";

(2)    "Your work"; or

(3)    "Impaired property";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect deficiency, inadequacy or dangerous condition in it.

18.    Coverage is limited and/or eliminated entirely for Pantanal (defense and indemnity) under the Policies with respect to the allegations and claims set forth in the Third-Party Complaint in the Underlying Action by virtue of one or more of the exclusions, including Exclusion b. Contractual Liability, Exclusion j.(5) and j.(6), Exclusion K. Damage to Your Product, Exclusion l. Damage to Your Work, Exclusion m. Damage to Impaired Property or Property Not Physically Injured and Exclusion n. Recall of Products, Work or Impaired Property.

19.    The 2021 Policy also contains the Limitation of Coverage to Business Description endorsement (Form SB064-0615), which states, in part:

**LIMITATION OF COVERAGE
TO
BUSINESS DESCRIPTION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

BUSINESS DESCRIPTION:              Carpentry & Siding Installation

**A. SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

   **(4)**    The "bodily injury" or "property damage" is caused by or results from the business described in the Schedule.

**B. SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

This insurance applies to "personal and advertising injury" caused by an offense in the course of the business described in the Schedule.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

20.    The 2022 Policy also contains the Limitation of Coverage to Business Description

endorsement (Form SB064-0615), which states, in part:

**LIMITATION OF COVERAGE
TO
BUSINESS DESCRIPTION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

BUSINESS DESCRIPTION:              Class Code as shown on form SB049 CGL Part Declarations – Item 3. and, if applicable, Class Codes shown on form SB071 CGL Part Declarations Extension.

**A. SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

**(4)** The "bodily injury" or "property damage" is caused by or results from the business described in the Schedule.

**B. SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

This insurance applies to "personal and advertising injury" caused by an offense in the course of the business described in the Schedule.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

21.    Per the 2022 Policy, the Commercial General Liability Coverage Part Declarations (Form SB049-0615) shows the following business description class codes: "Carpentry – interior" (Code No. 91341) and "Carpentry" (Class Code 01342).

22.    Per the 2022 Policy, the Commercial General Liability Coverage Part Declarations Extension (Form SB071-0615) shows the following business description class codes: "Door, Window or Assembled Millwork Installation – metal" (Code No. 91746) and "Siding Installation" (Code No. 98967).

23.    The Third-Party Complaint in the Underlying Action alleges that Pantanal was to perform the foundation work for the four-unit condominium complex, and that the plaintiffs alleged defects in the foundation.

24.    The allegedly defective foundation work performed by Pantanal is not a business described in the Schedule of the Limitation of Coverage to Business Description endorsements in the Policies.

25.    Because the allegations and claims asserted in the Third-Party Complaint in the Underlying Action against Pantanal do not allege "property damage" that was caused by or results from the business descriptions in the Schedule of the Limitation of Coverage to Business Description endorsements in the Policies, there is no coverage.

26.     The Policies also contain Exclusion – Continuous Or Progressive Injury and Damage endorsement (Form SB092-0517) which states, in part:

### EXCLUSION – CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE COVERAGE PART**

It is agreed under **Section I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring agreement**, Paragraph **b (3)**, **c** and **d** are deleted in their entirety and the following exclusion is added to **Section I, 2. Exclusions** of this policy.

This insurance does not apply to:

1.      Any damages arising out of or related to "bodily injury" or "property damage" whether such "bodily injury" or "property damage" is known or unknown,

    (a)     which first occurred in whole or in part prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or

    (b)     which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "bodily injury," or "property damage" continues during this policy period; or

    (c)     which were caused, or are alleged to have been caused, by the same condition(s) or defective construction which first existed prior to the inception date of this policy.

2.      Any damages arising out of or related to "bodily injury" or "property damage" whether known or unknown, which are in the process of adjustment, settlement, or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier).

We shall have no duty to defend any insured against any loss, claim, "suit," or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

### ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

27.     To the extent the allegations or claims asserted against Pantanal in the Underlying Action fall within the scope of the Exclusion – Continuous Or Progressive Injury and Damage, there is no coverage.

28.     The Policies also contain the Fungi Or Bacteria Exclusion endorsement (Form CG 21 67 12 04), which provides, in part:

### FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2.     Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

    **a.**    "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    **b.**    Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

29.    To the extent the allegations or claims asserted against Pantanal in the Underlying Action fall within the scope of the Fungi or Bacteria Exclusion, there is no coverage.

30.    Section IV – Commercial General Liability Conditions of the Policies provide, in part:

**2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)**    How, when and where the "occurrence" or offense took place;

**(2)**    The names and addresses of any injured persons and witnesses; and

**(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**    If a claim is made or "suit" is brought against any insured, you must:

**(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

**(2)**    Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**    You and any other involved insured must:

**(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)**    Authorize us to obtain records and other information;

**(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)**    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

31.    By letter dated July 21, 2023, CFSIC advised Pantanal that it would provide a defense to Pantanal under the Policies with respect to the Third-Party Complaint filed against it in the Underlying Action under a full and complete reservation of the right to disclaim coverage.

32.    CFSIC appointed Jeffrey C. McLucas, Esq. of the law firm of Manning Gross + Massenburg LLP to defend Pantanal against the Third-Party Complaint in the Underlying Action.

33.    Since July 2023, CFSIC, Attorney McLucas and others have made numerous attempts to contact and communicate with Pantanal and its Owner and President, Marcio A. Da Silva, for purposes of the defense of Pantanal, but Pantanal and Mr. Da Silva have repeatedly failed and refused to respond or otherwise communicate with CFSIC and Attorney McLucas.

34.    Despite the diligent efforts of CFSIC, Attorney McLucas and others, Pantanal and Mr. Da Silva have refused to participate in discovery, including their repeated failures to provide documents, assist in the preparation of responses to discovery such as interrogatories, or to attend depositions noticed (and re-noticed) for Pantanal's corporate representative, all of which Pantanal is contractually required to do as part of its duty to cooperate with CFSIC under the Policies.

35.    For several months, Pantanal and Mr. Da Silva have ignored or failed to respond to numerous telephone messages, e-mails, certified and regular letters, including correspondence translated into Brazilian Portuguese (*i.e.*, Brasileiro) and calls from interpreters, requesting their cooperation and cautioning Pantanal of the potential legal and coverage consequences for its failure to cooperate, including a denial of coverage.

36.    By way of example, when Mr. Da Silva again failed to appear for a re-scheduled deposition of Pantanal's corporate representative, Attorney McLucas offered to drive, pick him up

and bring him to the deposition, but Mr. Da Silva rejected that offer and refused to appear for the deposition without any justification or excuse.

37.     CFISC, Attorney McClucas and others have made numerous attempts to reach Mr. Da Silva (directly and by way of interpreters and also through Mr. Da Silva's wife) to ask and persuade him to cooperate with defense counsel and to participate in the defense.  Mr. Da Silva, however, has persisted in his refusal to make himself available to participate in the Underlying Action or otherwise cooperate with defense counsel.

38.     Pantanal's prior and ongoing refusal to communicate, provide documents, assist in responding to interrogatories, attend a deposition and cooperate in the defense has substantially prejudiced CFSIC in its defense of the claims asserted against Pantanal in the Underlying Action warranting a complete denial of coverage under the Policies in connection therewith.

39.     Other terms, provisions, conditions and exclusions in the Policies apply to limit or bar coverage for the allegations and claims asserted against Pantanal in the Underlying Action.

## **COUNT I**
### **(Declaratory Judgment – No Duty to Defend)**

40.     CFSIC incorporates herein by reference the allegations set forth in Paragraphs 1 through 39 of the Complaint as if they were specifically set forth herein.

41.     CFSIC has no duty to defend Pantanal under the Policies with respect to the allegations and claims set forth in the Third-Party Complaint in the Underlying Action by virtue of the terms, provisions, conditions and exclusions in the Policies.

42.     CFSIC has at all times reserved its rights to disclaim coverage under the Policies.

43.     An actual controversy exists between the parties.

44.     CFSIC seeks and is entitled to a declaration that it has no obligation to defend Pantanal under the Policies with respect to the allegations and claims set forth in the Third-Party Complaint in the Underlying Actions.

WHEREFORE, CFSIC seeks a declaration that it has no obligation to defend Pantanal under the Policies with respect to the allegations and claims set forth in the Third-Party Complaint in the Underlying Action.

## COUNT II
### (Declaratory Judgment – No Duty to Indemnify)

45.     CFSIC incorporate herein by reference the allegations set forth in Paragraphs 1 through 44 of the Complaint as if they were specifically set forth herein.

46.     CFSIC has no duty to indemnify Pantanal under the Policies with respect to the allegations and claims set forth in the Third-Party Complaint in the Underlying Action by virtue of the terms, provisions, conditions and exclusions in the Policies.

47.     CFSIC has at all times reserved its rights to disclaim coverage under the Policies.

48.     An actual controversy exists between the parties.

49.     CFSIC seeks and is entitled to a declaration that it has no obligation to indemnify Pantanal under the Policies with respect to the allegations and claims set forth in the Third-Party Complaint in the Underlying Actions.

WHEREFORE, CFSIC seeks a declaration that it has no obligation to indemnify Pantanal under the Policies with respect to the allegations and claims set forth in the Third-Party Complaint in the Underlying Action.

## COUNT III
### (Declaratory Judgment – Failure to Cooperate)

50.     CFSIC incorporate herein by reference the allegations set forth in Paragraphs 1 through 49 of the Complaint as if they were specifically set forth herein.

51.     The conduct described herein on the part of Pantanal, including Mr. Da Silva as its Owner and President, constitutes a failure to cooperate and assist in the defense of the Underlying Action and is a direct and material breach of the cooperation provisions in the Policies.

52.     CFSIC has exercised diligent efforts to secure the cooperation of Pantanal, including Mr. Da Silva.

53.     CFSIC has satisfied its obligations under the Policies and all conditions precedent, if any, to enforcement of its rights under the Policies.

54.     CFSIC has been seriously and materially prejudiced in its defense of Pantanal in the Underlying Action due to the material breaches of contract and the failures and refusals of Pantanal to comply with the terms and conditions of the Policies as described herein.

WHEREFORE, CFSIC seeks a declaration that Pantanal has failed and/or refused to cooperate and assist in the defense of the Underlying Action; that Pantanal's failure to cooperate and assist in the defense of the Underlying Action constitutes a serious and material breach of the Policies issued by CFSIC; that CFSIC has been prejudiced by Pantanal's failure to cooperate and assist in the defense of the Underlying Action; and, that CFSIC is under no obligation to defend and/or indemnify Pantanal under the Policies with respect to the allegations and claims set forth in the Third-Party Complaint in the Underlying Action by virtue of Pantanal's breach of its duty to cooperate.

**CRUM & FORSTER SPECIALTY**
**INSURANCE COMPANY,**
By its attorneys,


*/s/ Patrick T. Ryan*
Peter G. Hermes, BBO No. 231840
Peter.Hermes@clydeco.us
Patrick T. Ryan, BBO No. 688585
Patrick.Ryan@clydeco.us
CLYDE & CO US LLP
265 Franklin Street, Suite 802
Boston, MA  02110-3113
(617) 728-0050
(617) 728-0052 (Fax)

Date: May 3, 2024